**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HECTOR CORTEZ (#R66371), | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 13 C 5591 |
| v. | ) | |
| | ) | |
| RICK HARRINGTON, Warden, Menard | ) | |
| Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Before the Court is pro se Petitioner Hector Cortez's petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254(d). For the following reasons, the Court denies Cortez's habeas

petition and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

**BACKGROUND**

Cortez does not present clear and convincing evidence challenging the statement of facts

in the last state court decisions addressing his arguments on the merits, and thus the Court

presumes those facts are correct for purposes of its habeas review. *See* 28 U.S.C. § 2254(e)(1);

*Bolton v. Akpore,* 730 F.3d 685, 687 (7th Cir. 2013). The Court therefore adopts the underlying

facts as set forth by the Illinois Appellate Court in *People v. Cortez,* 402 Ill.App.3d 468, 931

N.E.2d 751, 341 Ill.Dec. 854 (1st Dist. 2010), and *People v. Cortez,* No. 1-11-027 (1st Dist. June

29, 2012) (unpublished).

**I.     Factual Background**

The State of Illinois prosecuted Cortez for murder in relation to the death of Joshua

Siguenza, also known as "Tun Tun." The victim was found in Ronan Park on Chicago's North

Side in the early morning of July 26, 2002.  At trial, Chicago Police Officer Jeremy Gomez

testified that he was the first to arrive on the scene at Ronan Park and that he and his partner

determined that the victim was dead.  Officer Gomez further testified that Ronan Park was

known turf of the Lawrence and Kedzie faction of the Latin Kings street gang.

In addition, Marie "Vicki" Adame and her sister Vilma "Veronica" Adame testified for

the State at trial.  Both testified that at the time of the shooting, they were associated with the

Latin Kings, and that on July 25, 2002, they went to a liquor store with Ruby Castillo and

purchased liquor.  They later met up with an individual named Gordo, as well as Tun Tun, and

then walked to Ronan Park.  While they were sitting at a picnic table, Cucuy (Antonio Martinez)

and Tetoz (Cortez) approached, after which the sisters got up to walk away.  At that time, Vicki

saw that Cortez was twirling a gun around.  As she walked away, she heard the men arguing and

then she heard gunshots.  After that, she then turned and saw sparks near Cortez.  She heard four

or five shots as she ran away.  Veronica testified that she did not see Cortez with a gun, but saw

a white t-shirt wrapped around his right hand.  When Veronica heard a gunshot, she turned and

saw Cortez standing on the picnic table with Martinez beside him and Tun Tun under the table.

Unlike Vicki, Veronica did not see sparks, but did hear four or five shots.

Several days later, Cortez called Vicki and told her to keep the incident at Ronan Park to

herself.   Indeed, neither Vicki nor Veronica went to the police to report what they saw, but

police officers picked them up later and took them to a police station for questioning.  There,

both Vicki and Veronica Adame identified photographs of Cortez and Martinez.

At trial, Paulscha Joseph testified that he was a former Latin King and became a

government informant following an arrest.  On October 8, 2002, Joseph met with several high

2

ranking members of the Latin Kings, including Martinez. The high ranking members assigned Joseph to dispose of two guns for the gang, one of which was the murder weapon in the Tun Tun shooting. Thereafter, on October 15, 2002, Joseph went to Martinez's uncle's house, where Martinez handed over the gun. In a recorded conversation published to the jury, Joseph asked Martinez who was shot with the gun to which Martinez responded, "Tun Tun." Joseph asked Martinez if he was the one who "smoked" him and Martinez responded "yeah." When Joseph asked why, Martinez responded that he "had problems with this motherfucker." Joseph left with the gun and then gave it to federal agents.

On October 17, 2002, Joseph drove Cortez home from a gang meeting. During the ride, the conversation turned to Tun Tun's shooting. Joseph recorded the conversation, which was subsequently played for the jury. During the conversation, Joseph asked Cortez who "did it" and Cortez replied "me, bro" because Tun Tun was "talkin shit." Further, Joseph asked how many times Cortez shot Tun Tun and Cortez said "five." Joseph then asked Cortez, "you shot him all five times?" and Cortez replied, "yeah." Cortez indicated that he "left him in the park." Shortly after this conversation, Chicago police arrested Cortez and Martinez.

The parties stipulated to a portion of a handwritten statement Martinez made to a Cook County Assistant State's Attorney on November 3, 2002. In his statement, Martinez explained that when Joseph asked him who killed Tun Tun, Martinez told Joseph that he killed Tun Tun because he wanted to be the "big man" and to be "respected" and "feared" by Joseph. Also, the parties stipulated to the admission of the autopsy photographs and to the foundation for three bullets that the medical examiner would testify he recovered from Tun Tun's body during the examination. At trial, a police detective testified that a forensic scientist specializing in firearm

identification determined that the bullets recovered from the victim's body were fired from the gun recovered from Martinez. Furthermore, the trial court admitted the autopsy report, including a toxicology report on the victim, over Cortez's objection.

## II.     Procedural Background

After hearing all of the evidence, a jury found Cortez guilty of first degree murder while personally discharging a firearm in October 2007. The Circuit Court sentenced him to 45 years in prison. Cortez appealed his conviction to the Illinois Appellate Court, First District, arguing that the Circuit Court violated his right to confront witnesses when the court admitted into evidence (1) Martinez's repudiation of his prior confession, and (2) the autopsy report. On June 22, 2010, the Illinois Appellate Court affirmed Cortez's conviction. Cortez filed a petition for a rehearing on July 6, 2010, that the Illinois Appellate Court denied on July 19, 2010.

Cortez then filed a petition for leave to appeal ("PLA") in the Supreme Court of Illinois arguing that the Circuit Court violated his right to confront witnesses when it admitted into evidence (1) Martinez's repudiation of his prior confession, and (2) the autopsy report. On November 24, 2010, the Supreme Court of Illinois denied Cortez's PLA. Cortez did not file a petition to the United States Supreme Court for a writ of certiorari.

On October 12, 2010, Cortez filed a pro se post-conviction petition pursuant to 725 ILCS 5/122-1, *et seq.*, in the Circuit Court of Cook County raising the following claims: (1) his trial counsel was constitutionally ineffective for failing to (a) move to quash his arrest and/or to suppress his audio-recorded statement based upon a lack of probable cause, (b) argue that the introduction of his inculpatory statements recorded by a police informant — Paulscha Joseph — violated his Fifth Amendment rights, (c) argue that Joseph's testimony was biased, and (d) argue

4

that Vicki and Veronica Adame's prior inconsistent statements were inadmissible and/or that their statements were unreliable because they were inconsistent with one another; (2) his appellate counsel was ineffective for failing to raise the issues asserted above; and (3) his sentence violated the Proportionate Penalties Clause of the Illinois State Constitution.

The Circuit Court summarily dismissed Cortez's pro se post-conviction petition as frivolous and patently without merit. Cortez, by counsel, appealed to the Illinois Appellate Court arguing that the post-conviction trial court had failed to review his Proportionate Penalties Clause argument within the statutorily mandated ninety-day time frame, rendering the summary dismissal void. The Illinois Appellate Court, First District, affirmed the Circuit Court's summary dismissal and concluded that the Circuit Court complied with the procedural requirements set forth in the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1, *et seq.*

On August 2, 2012, Cortez filed a pro se PLA with the Supreme Court of Illinois arguing that: (1) there was insufficient evidence to convict him; and (2) Vicki and Veronica Adame's prior inconsistent statements were inadmissible under state procedural law, namely, 725 ILCS 5/115-10.1. The Supreme Court of Illinois denied Cortez's post-conviction PLA on September 26, 2012.

## III.    Habeas Petition

On August 1, 2013, Cortez filed the present pro se habeas petition. Construing his pro se allegations liberally, *see Turley v. Rednour,* 729 F.3d 645, 651 (7th Cir. 2013), Cortez brings the following claims: (1) his trial counsel was constitutionally ineffective for failing to (a) move to quash his arrest and/or to suppress his audio-recorded statement based upon a lack of probable cause, (b) argue that the introduction of his inculpatory statements recorded by a police

informant, Paulscha Joseph, violated his Fifth Amendment rights, (c) argue that Joseph's

testimony was biased, (d) argue that Vicki and Veronica Adame's prior inconsistent statements

were inadmissible and/or that their statements were unreliable because they were inconsistent

with one another; (2) his appellate counsel was ineffective for failing to raise the issues asserted

above; (3) his sentence violated the Proportionate Penalties Clause of the Illinois State

Constitution; and (4) the post-conviction trial court improperly dismissed his post-conviction

petition without addressing one of his six claims within the statutorily required ninety-day time

period.

## LEGAL STANDARDS

### I. Habeas Relief

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas

relief cannot be granted unless the state court's decision was contrary to, or an unreasonable

application of federal law clearly established by the Supreme Court.  *See Williams v. Taylor,* 529

U.S. 362, 402-03, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Warren v. Baenen,* 712 F.3d 1090,

1096 (7th Cir. 2013).  In *Williams*, the Supreme Court explained that a state court's decision is

"contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion

opposite to that reached by this Court on a question of law" or "if the state court confronts facts

that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a

result opposite to ours."  *See id.* at 405; *see also Kamlager v. Pollard,* 715 F.3d 1010, 1015 (7th

Cir. 2013) ("A state court decision is 'contrary to' federal law if it applies the wrong legal

standard established by Supreme Court precedent or decides a case differently than the Supreme

Court on materially indistinguishable facts.").

6

Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See Williams,* 529 U.S. at 407; *see also Taylor v. Grounds,* 721 F.3d 809, 817 (7th Cir. 2013). "The state court's application of federal law must not only be incorrect, but 'objectively unreasonable.'" *Rann v. Atchison,* 689 F.3d 832, 835 (7th Cir. 2012); *see also Williams*, 529 U.S. at 410 ("*unreasonable* application of federal law is different from an *incorrect* application of federal law") (emphasis in original). To be considered objectively unreasonable, a state court's decision must be "well outside the boundaries of permissible differences of opinion." *Kamlager,* 715 F.3d at 1016 (citation omitted).

## II.     Exhaustion and Procedural Default

"A state petitioner seeking a writ of habeas corpus in federal court must first exhaust the remedies available to him in state court, 28 U.S.C. § 2254(b)(1)(A), 'thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights.'" *Cheeks v. Gaetz,* 571 F.3d 680, 685 (7th Cir. 2009) (citations omitted). In particular, a habeas petitioner must fully and fairly present his federal claims through one full round of state court review before he files his federal habeas petition. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Mulero v. Thompson,* 668 F.3d 529, 536 (7th Cir. 2012). "[W]hen a petitioner has exhausted his state court remedies and failed to properly assert his federal claims at each level of review those claims are procedurally defaulted." *Woods v. Schwartz,* 589 F.3d 368, 373 (7th Cir. 2009). Procedural default precludes federal court review of a petitioner's habeas claims. *See Mulero,* 668 F.3d at 536.

A habeas petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice or by showing that the Court's failure to consider the claim would result in a fundamental miscarriage of justice. *See House v. Bell,* 547 U.S. 518, 536, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006); *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The Supreme Court defines cause sufficient to excuse procedural default as "some objective factor external to the defense" which prevents a petitioner from pursuing his constitutional claim in state court. *See Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Weddington v. Zatecky,* 721 F.3d 456, 465 (7th Cir. 2013). Prejudice means actual prejudice infecting the "entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494 (citation omitted). A fundamental miscarriage of justice occurs when a habeas petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 496.

## ANALYSIS

Cortez has procedurally defaulted all of his habeas claims because he did not fully and fairly present them through one full round of state court review. *See Boerckel,* 526 U.S. at 845, 848; *Mulero,* 668 F.3d at 536. To clarify, although Cortez brought his first three habeas claims in his October 12, 2010 pro se post-conviction petition, he did not appeal these claims to the Illinois Appellate Court or in his PLA to the Supreme Court of Illinois. Meanwhile, Cortez brought his fourth habeas claim in his post-conviction appeal, but did not bring this claim in his PLA to the Supreme Court of Illinois — nor did he bring it in his pro se post-conviction petition in the first instance. Therefore, he has procedurally defaulted all of his habeas claims, and thus the Court cannot consider the merits of his claims unless he establishes cause and prejudice or

the fundamental miscarriage of justice exception. *See House,* 547 U.S. at 536 *Murray*, 477 U.S. at 492-96.

Although a claim of ineffective assistance of counsel can constitute "cause" to set aside a procedural default, the ineffective assistance of counsel claim itself cannot be procedurally defaulted. *See Promotor v. Pollard,* 628 F.3d 878, 887 (7th Cir. 2010). Here, Cortez makes a related argument. Specifically, he argues that his failure to raise his habeas claims in his post-conviction appeal was due to his post-conviction appellate counsel abandoning these claims. Although an ineffective assistance of counsel claim can constitute cause to set aside a procedural default, *see id.,* habeas petitioners do not have a Sixth Amendment right to counsel for state court post-conviction proceedings. *See Coleman,* 501 U.S. at 752; *Resendez v. Knight,* 653 F.3d 445, 446 (7th Cir. 2011); *Wilson v. United States,* 413 F.3d 685, 687 (7th Cir. 2005). Accordingly, post-conviction counsel's ineffective assistance of counsel cannot establish "cause" under the circumstances.

Next, Cortez argues that the Court should except his procedurally defaulted claims because he did not have access to the prison law library due to a prison shutdown before he filed his post-conviction PLA to the Supreme Court of Illinois. More specifically, Cortez maintains that the law library was the only place he could receive legal material and advice regarding the deadline for his post-conviction PLA. First, the deadline for his PLA is not a substantive or legal issue requiring access to the law library. *See Williams v. Buss,* 538 F.3d 683, 686 (7th Cir. 2008). Moreover, Respondent does not argue that Cortez's post-conviction PLA was untimely. As such, Cortez does not sufficiently explain why the lack of access to the law library hindered his post-conviction PLA. *See id*.

9

Last, Cortez does not argue that the fundamental miscarriage of justice exception applies to his defaulted claims. Because Cortez has not established good cause and prejudice for his procedural default or that the fundamental miscarriage of justice exception applies, the Court cannot reach the merits of his habeas claims. *See Bolton*, 730 F.3d at 696; *see also Williams,* 538 F.3d at 686 ("an unexcused procedural default ends the case").

## III. Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Cortez a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in the present order. *See Gonzalez v. Thaler,* ___ U.S. ___, 132 S.Ct. 641, 649 n.5, 181 L.Ed.2d 619 (2012).

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition, instead, he must first request a certificate of appealability. *See Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003); *Lavin v. Rednour,* 641 F.3d 830, 832 (7th Cir. 2011). A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See Miller-El,* 537 U.S. at 336; *Narvaez v. United States,* 641 F.3d 877, 881 (7th Cir. 2011); 28 U.S.C. § 2253(c)(2). Under this standard, Cortez must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El,* 537 U.S. at 336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)). In cases where a district court denies a habeas claim on procedural

grounds, a certificate of appealability should issue only if the petitioner shows that (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack,* 529 U.S. at 485.

Here, jurists of reason would not debate the Court's conclusion that Cortez procedurally defaulted all of his habeas claims. *See id.* at 485 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."). Therefore, the Court declines to certify any issues for appeal. *See* 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For these reasons, the Court denies Cortez's petition for a writ of habeas corpus and declines to certify any issues for appeal. *See* 28 U.S.C. §§ 2253(c)(2), 2254(d).

**Dated:** December 5, 2013

ENTERED

AMY J. ST. EVE
**United States District Judge**

11